1  Jeffrey D. Kaliel (CA Bar No. 238293)
   jkaliel@kalielpllc.com
2  KALIEL PLLC
3  1875 Connecticut Ave., NW, 10th Floor
   Washington, D.C.  20009
4  (202) 350-4783

5
   Attorney for Plaintiffs Petra Lopez, Colea Wright
6  and the Putative Class

7              **UNITED STATES DISTRICT COURT**

8              **EASTERN DISTRICT OF CALIFORNIA**

9

10 PETRA LOPEZ and COLEA WRIGHT,    Case No.
   on behalf of themselves and all others
11 similarly situated,
                                    **CLASS ACTION COMPLAINT**
12              Plaintiffs,

13       v.

14 BBVA COMPASS BANK, N.A.,

15              Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs PETRA LOPEZ and COLEA WRIGHT, on behalf of themselves and all others similarly situated, sue defendant BBVA COMPASS BANK, N.A., and allege:

## INTRODUCTION

1)       Plaintiffs seek redress for two distinct unlawful practices that BBVA COMPASS BANK, N.A. ("BBVA BANK") perpetrates on its checking customers. Plaintiffs assert this action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated throughout the United States, for damages and other relief arising from BBVA BANK's routine practice of a) assessing overdraft fees ("OD Fees") on transactions that did not overdraw checking account available balances; and b) wrongfully assessing its customers so-called "Extended Overdraft Fees."

2)       Besides being deceptive, unfair and unconscionable, the first practice breaches promises made in BBVA BANK's contracts—specifically, the promise to charge OD Fees only on transactions which actually overdraw an account—and are deceptive.

3)       At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, BBVA BANK immediately decrements consumers' checking accounts for the amount of the purchase and sets aside funds in a checking account to cover that specific transaction.  As a result, and with limited exceptions, customers' accounts *always* have sufficient available funds to cover these transactions throughout their entire life-cycle.

4)       However, BBVA BANK still assesses crippling $32 OD Fees on many of these transactions, in violation of its contractual promises not to do so.

5)       Despite putting aside sufficient available funds for debit card transactions, BBVA BANK charges OD Fees on those same transactions if they purportedly settle—days later—into a negative balance ("Authorize Positive, Purportedly Settle Negative Transactions" or "APPSN Transactions").

6)      Here is how it works.  BBVA BANK maintains a running account balance in real time, tracking funds consumers have for immediate use.  This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instant they are made.  When a customer makes a purchase with a debit card, BBVA BANK sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's account balance.  Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

7)      Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

8)      That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has been reduced to account for earlier debit card transactions.  This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

9)      Still, despite keeping those held funds off-limits for other transactions, BBVA BANK improperly charges OD Fees on APPSN Transactions—the latter which always have sufficient available funds for payment.

10)    Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "deceptive" when:

> a financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

disclosures), the practice of assessing the fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights.

11)     There is no justification for these practices, other than to maximize BBVA BANK's OD Fee revenue.  APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But BBVA BANK is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening transactions—and it does the latter to the tune of millions of dollars each year.  But BBVA BANK was not content with these millions in OD Fees.  Instead, it sought millions *more* in OD Fees on APPSN Transactions.

12)     In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that the BBVA BANK immediately deducts funds, or places a hold on funds, at the very moment debit card transactions are initiated, and will only charge OD Fees on transactions with insufficient available funds to pay a given transaction:

> **Available Balance**. The balance of funds in your account that is available for immediate withdrawal. Unlike the posted balance, the available balance reflects any holds placed on your account, including the restrictions described in the Funds Availability Disclosure included with this Agreement.
> […]
> **Insufficient Available Balance and Overdrafts**. If your available balance is insufficient to pay the total amount of items presented against your account, we may, at our option, return any of the items unpaid or pay any or all of the items, even though payment will cause an overdraft of your account.  We may return any item at any time if your available balance is insufficient to pay that item, even if we previously have permitted overdrafts…You agree that, if your available balance is insufficient to pay any item presented against your account, you will pay promptly both our service charge for handling and processing that item and the amount of any overdraft without further notice or demand.
> […]

CLASS ACTION COMPLAINT

You may withdraw part or all of your account's available balance. Any account owner or authorized signer of a joint account or any agent of any owner may withdraw all or part of the available balance in the account, regardless of who deposited the funds into the account.

[…]

**If an item was initiated at a point-of-sale terminal or is a VISA transaction or ATM transaction, you agree that we may charge the amount of the item to your account or place a hold on your account in the amount requested by the merchant immediately upon authorization of such transaction, even though we have not then actually received the item for payment**. We will make payment for a transaction only after the actual transaction is presented to us physically or electronically. Each such hold will reduce the available balance in your account by the amount of the hold.

Exhibit 1, BBVA BANK's "Consumer Deposit Account Agreement" (emphasis added).

13)     For APPSN transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to pay those transactions—yet BBVA BANK assesses OD Fees on them anyway.

14)     In short, BBVA BANK is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

15)     Second, and as alleged in detail below, the separate Extended Overdraft "Fee" that BBVA charges is deducted from a customer's account *in addition to* an initial overdraft fee if and when the customer's overdraft status remains in effect for a period of five consecutive business days after the account balances goes negative.  In reality, BBVA BANK's assessment and collection of the Extended Overdraft Fee from its customers constitutes interest for the use, forbearance, or detention of money.  The amount of interest charged far exceeds the permissible limit under the National Bank Act.

16)     Plaintiffs and other BBVA BANK customers have been injured by BBVA BANK's practices.  On behalf of themselves and the putative class, Plaintiffs seek damages and restitution for BBVA BANK's breach of contract and violations of federal and state statutes. Additionally, Plaintiffs seek an injunction on behalf of the general public to prevent BBVA BANK from continuing to engage in its illegal and deceptive practices.

## PARTIES

17)     Plaintiff, Petra Lopez, is a resident of the State of California and has used her checking account with BBVA BANK to conduct transactions in California, for all transactions relevant to this Complaint.

18)     Plaintiff, Colea Wright, is a resident of the State of California and has used her checking account with BBVA BANK to conduct transactions in California, for all transactions relevant to this Complaint.

19)     BBVA COMPASS BANK is a national bank with its U.S. headquarters and principal place of business located in Birmingham, Alabama.  BBVA BANK operates numerous retail banking centers nationwide and throughout California. Among other things, BBVA BANK is engaged in the business of providing retail banking services to consumers, including Plaintiffs and members of the putative classes, which includes the issuance of checks and debit cards for use by customers in conjunction with their checking accounts.

## JURISDICTION

20)     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, namely the National Bank Act, 12 U.S.C. § 1, *et seq.*, regulations promulgated by the Office of the Comptroller of the Currency, and the Class Action Fairness Act.

21)     BBVA BANK regularly and systematically conducts business and provides retail banking services in this district, and provides retail banking services to customers in this district, including Plaintiff Lopez and members of the putative class.

**VENUE**

22)   Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because BBVA BANK is subject to personal jurisdiction in this Court and regularly conducts business within this district, and because Plaintiff Lopez conducted the relevant account transactions in this district.  Thus, a substantial part of the events giving rise to the claims asserted herein occurred and continue to occur in this district.

**OVERVIEW**

**A.     Mechanics of a Debit Card Transaction**

23)   A debit card transaction occurs in two parts.  First, authorization for the purchase amount is instantaneously obtained by the merchant from BBVA BANK. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to BBVA BANK, which verifies that the customer's account is valid and that sufficient available funds are sufficient to "cover" the transaction amount.

24)   At this step, if the transaction is approved, BBVA BANK immediately decrements the funds in a consumer's account and sequesters funds in the amount of the transaction, but does not yet transfer the funds to the merchant.

25)   Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 29, 2009).

26)     Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.  This is referred to in the banking industry as "posting" or "settling"—something which may occur several days after the transaction was initially initiated.

27)     There is no change—no impact whatsoever—to the available funds in an account when posting or payment of a transaction that settles in the same amount for which it authorized occurs.  That is because available funds amounts do not change for debit card transactions that settle in the same amount for which they were authorized.

## B.     BBVA BANK Account Documents

28)     Plaintiffs' checking accounts with BBVA BANK were, at all relevant times, governed by BBVA BANK's standardized contract for deposit accounts, the material terms of which are drafted by BBVA BANK, amended by BBVA BANK from time to time at its convenience and complete discretion, and imposed by BBVA BANK on all of its customers.

29)     In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that the BBVA BANK will only charge OD Fees on transactions with insufficient available funds to pay a given transaction:

> **Available Balance**. The balance of funds in your account that is available for immediate withdrawal. Unlike the posted balance, the available balance **reflects any holds** placed on your account, including the restrictions described in the Funds Availability Disclosure included with this Agreement.
> […]
> **Insufficient Available Balance and Overdrafts**. If your available balance is insufficient to pay the total amount of items presented against your account, we may, at our option, return any of the items unpaid or pay any or all of the items, even though payment will cause an overdraft of your account.  We may return any item at any time if your available balance is insufficient to pay that item, even if we previously have permitted overdrafts…You agree that, if your available balance is insufficient to pay any item presented against your account, you will pay promptly both our service charge for handling and

processing that item and the amount of any overdraft without further notice or demand.

[…]

You may withdraw part or all of your account's available balance. Any account owner or authorized signer of a joint account or any agent of any owner may withdraw all or part of the available balance in the account, regardless of who deposited the funds into the account.

[…]

**If an item was initiated at a point-of-sale terminal or is a VISA transaction or ATM transaction, you agree that we may charge the amount of the item to your account or place a hold on your account in the amount requested by the merchant immediately upon authorization of such transaction, even though we have not then actually received the item for payment**. We will make payment for a transaction only after the actual transaction is presented to us physically or electronically. **Each such hold will reduce the available balance in your account by the amount of the hold.**

Exhibit "A" BBVA BANK's "Consumer Deposit Account Agreement" (emphasis added).

C. **The Account Documents Fundamentally Misconstrue the BBVA BANK's True Overdraft Fee and Debit Processing Practices**

30) The Account Documents misconstrue the BBVA BANK's true debit card processing and OD Fee practices in at least two ways.

31) First, and most fundamentally, the BBVA BANK charges OD Fees on debit card transactions for which there are sufficient available funds to pay the transactions.   That is despite contractual representations that the BBVA BANK will only charge OD Fees on transactions with insufficient available funds to pay a given transaction and that the bank will immediately deduct or place a hold on funds for such transactions.

32) BBVA BANK assesses OD Fees on APPSN Transactions that **_do_** have sufficient available funds to pay them throughout their lifecycle.

10

33)     Those available funds are sequestered at the moment a debit card transaction is approved by BBVA BANK.

34)     BBVA BANK's practice of charging OD Fees even where sufficient available funds exist to pay a transaction violates a contractual promise not to do so. This discrepancy between BBVA BANK's actual practice and the contract causes consumers like Plaintiffs to incur more OD Fees than they should.

35)     Sufficient funds for APPSN Transactions actually are debited from the account immediately, consistent with standard industry practice.

36)     Because these withdrawals take place upon initiation, they cannot be re-debited later.  But that is what BBVA BANK does when it re-debits the account during a secret batch posting process.

37)     In reality, BBVA BANK's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and at the time of settlement.

38)     At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds.  As such, BBVA BANK cannot then charge an OD Fee on such a transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

39)     Upon information and belief, something more is going on:  at the moment a debit card transaction is getting ready to settle, BBVA BANK does something new and unexpected, during the middle of the night, during its nightly batch posting process.  Specifically, BBVA BANK releases the hold it had placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

40)     This secret step allows it to charge overdraft fees on transactions that never should have gotten them—transactions that were authorized into sufficient funds, and for which BBVA BANK specifically set aside money to pay them.

41)     This discrepancy between BBVA BANK's actual practices and the contract causes consumers to incur more OD Fees than they should.

42)     <u>Second</u>, the bank promises to make overdraft determinations only at the time is elects whether or not to pay an overdraft: "If your available balance is insufficient to pay the total amount of items presented against your account, **we may, at our option, return any of the items unpaid or pay any or all of the items**, even though payment will cause an overdraft of your account" (emphasis added).

43)     But for debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined.  According to the "must-pay" network rule, once BBVA authorizes a debit card transaction, it has no choice but to pay it.  It cannot change its mind later.

44)     In short, BBVA BANK promises that it will make overdraft fee determinations at the time of authorization.  That means that APPSN Transactions rightly cannot incur overdraft fees.

45)     In sum, there is a yawning gap between BBVA BANK's practices as described in the account documents and BBVA BANK's practices in reality.

### D.     <u>Reasonable Consumers Understand Debit Card Transactions are Debited Immediately</u>

46)     The assessment of OD Fees on APPSN Transactions is fundamentally inconsistent with immediate withdrawal of funds for debit card transactions.  That is because if funds are immediately debited, they cannot be depleted by intervening transactions (and it is that subsequent depletion that is the necessary condition of APPSN Transactions).  If funds are immediately debited, then, they are necessarily applied to the debit card transactions for which they are debited.

47)     BBVA BANK was and is aware that this is precisely how its accountholders reasonably understand debit card transactions to work.

48)     BBVA BANK well knows that many consumers prefer debit cards for these very reasons.  Consumer research indicates that consumers prefer debit cards as

1  a budgeting device; because they don't allow debt like credit cards do; and because

2  the money comes directly out of a checking account.

3       49)   Consumer Action, a national nonprofit consumer education and

4  advocacy organization, advises consumers determining whether they should use a

5  debit card that "[t]here is no grace period on debit card purchases the way there is on

6  credit card purchases; the money is immediately deducted from your checking

7  account. Also, when you use a debit card you lose the one or two days of 'float' time

8  that a check usually takes to clear."[1]

9       50)   Further, Consumer Action informs consumers that, "Debit cards offer

10  the convenience of paying with plastic without the risk of overspending. When you

11  use a debit card, you do not get a monthly bill. You also avoid the finance charges

12  and debt that can come with a credit card if not paid off in full."

13       51)   This is a large part of the reason that debit cards have risen in popularity.

14  The number of terminals that accept debit cards in the United States has increased by

15  approximately 1.4 million in the last five years, and with that increasing ubiquity,

16  consumers have (along with credit cards) viewed debit cards "as a more convenient

17  option than refilling their wallets with cash from an ATM."[2]

18       52)   Not only have consumers increasingly substituted from cash to debit

19  cards, but they believe that a debit cards purchase is the functional equivalent to a

20  cash purchase, with the swipe of a card equating to handing over cash, permanently

21  and irreversibly.

22       53)   BBVA BANK was aware of a consumer perception that debit

23  transactions reduce an available balance *in a specified order*—namely, the order the

---

26  [1] *See* http://www.consumeraction.org/helpdesk/articles/what
_do_i_need_to_know_about_using_a_debit_card (last visited June 8, 2016).

27  [2]  Maria LaMagna, *Debit Cards Gaining on Case for Smallest Purchases*,
28  MARKETWATCH, Mar. 23, 2016, http://www.marketwatch.com/story/more-people-are-using-debit-cards-to-buy-a-pack-of-gum-2016-03-23.

CLASS ACTION COMPLAINT

transactions are actually initiated—and its account agreement only supports this perception.

   **E.   Plaintiff Wright's Overdraft Fee Experience**

54)   On November 1, 2016 Plaintiff Wright was assessed five OD Fees in the amount of $38.00 each for eight transactions that settled on October 31, five (5) of which were debit card transactions that were initiated on or prior to October 30. Plaintiff Wright was charged five OD fees despite the fact that positive funds were deducted immediately for at least five (5) of the debit card transactions on which she was assessed OD Fees.

55)   Indeed, the only reason six of the debit card transactions that settled on October 31 incurred overdraft fees was because of a $140 ATM withdrawal that Plaintiff Wright made *after* those six debit card transactions had already been initiated.

56)   Plaintiff does not dispute that BBVA BANK was within its rights to charge an OD Fee on the ATM transaction, because it was authorized into insufficient funds.  Plaintiff Wright disputes, however, that BBVA BANK was authorized to charge OD Fees on the prior in time debit card transactions initiated on sufficient funds.

57)   BBVA BANK assessed OD Fees on the held transactions even though it had sequestered available funds for those transactions at the time they were authorized.

   **F.   BBVA's Assessment of Extended Overdraft Fees Violates the National Bank Act's Usury Prohibition**

58)   The gist of the Bank's Extended Overdraft Fee is as follows:  If Customer "A" were to overdraft his or her account by $50.00, the bank first charges an overdraft fee of $32.00 per transaction.  However, if Customer A then fails to replenish his or her account to bring the balance to a positive figure within 10 business days, for having to extend credit to Customer A, BBVA BANK then assesses $25 as well as an additional $25 if the account remains overdrawn after an

1  additional 10 days.  The Extended Overdraft Fee policy is set forth in BBVA

2  BANK's Deposit Account Agreement and Fee Schedule.

3  　　　59)　Unlike an initial overdraft fee, the Extended Overdraft Fee is an

4  *additional* charge to a customer for which BBVA BANK has provided nothing new

5  in the way of services.  The charge is based solely on the alleged indebtedness to the

6  bank remaining unpaid by the customer for a period of time.  Because Defendant's

7  Extended Overdraft Fee is interest, the amount of the charges must comply with New

8  York usury law; however, they do not so comply.

9  　　　60)　By way of background, overdraft fees have been a substantial source of

10  revenue for banks for a number of years.  Overdraft fee revenues continue to

11  proliferate.  As technology has rapidly grown and enabled bank customers new ways

12  of accessing the money in their accounts, overdraft episodes and the attendant

13  imposition of overdraft fees have skyrocketed.  Recent reports from the U.S.

14  Consumer Financial Protection Bureau ("CFPB"), for example, show that a broad

15  investigation has been launched regarding bank overdraft practices and procedures

16  due to its concern that the growing cost of overdraft practices could place bank

17  customers at unnecessary risk.  In 2012 alone, banks took in approximately $32

18  billion in overdraft-related fees.

19  　　　61)　As a recent CFPB report reflects, "sustained negative balance" fees are

20  becoming popular with banks and account for nearly 10% of total overdraft-related

21  fees collected by banks which impose such charges.  According to the CFPB report

22  issued in July 2014, once a bank charges its customer a sustained overdraft fee on day

23  five, the negative balance is likely cured by the customer within just a few days,

24  rather than weeks.  As such, the bank's extension of credit to its overdrawn customer

25  is typically very short-term.  Moreover, most negative balances created by an

26  overdraft are not high figures.  Nearly two-thirds of transactions that cause overdrafts

27  were for $50.00 or less.  As these statistics highlight, a bank's exposure for carrying a

28  customer's overdraft is ordinarily very small and limited.  But rather than charging

legally permissible interest until its customer cures the overdraft balance, BBVA BANK instead charges a purported Extended Overdraft Fee that in reality is interest at an illegal rate.

## BBVA BANK'S Practice

62)     The specific issue in this case is BBVA BANK's practice of deducting the Extended Overdraft Fee from the accounts of its customers, including from Plaintiffs and others similarly situated.  BBVA BANK renders no additional service to its customers in exchange for charging this extra fee other than advancing the original money to a customer's account in an amount to cover the overdraft, for which the bank previously charged an initial overdraft fee.  BBVA BANK uses the fact that it has loaned funds to its customer as a pretext to justify charging the customer a secondary charge that exceeds lawful interest limits.

63)     In BBVA BANK's written deposit with its customers, including Plaintiff, the Extended Overdraft Fee provision states as follows:

| Extended Overdraft Service Charge | $25 per occurrence. Charged when your account remains overdrawn by more than $1.00 for ten (10) consecutive calendar days. An additional $25 Extended Overdraft Service Charge will be charged if your account remains overdrawn by more than $1.00 for twenty (20) consecutive calendar days. |
| --- | --- |

64)     Under this provision, BBVA BANK charges a fee against any checking or money market account merely by virtue of the customer failing to pay the bank a specific sum of money (the amount of the overdraft and the assessed overdraft fee) for a period of 10 or more consecutive business days.

65)     There is nothing in BBVA BANK's written materials disclosing that this additional "fee" is, in reality, an interest charge on extended credit.  Indeed, BBVA Bank affirmatively misrepresents the true nature of the Extended Overdraft Fee—a false representation that the Extended Overdraft Fee is not itself interest.

1    66)    In Plaintiff Wright's case, one of her monthly bank statements for her

2    BBVA BANK checking account show that her account went into "overdraft" status

3    on September 12, 2016, and that her account remained in that status until October 14,

4    2017.  On both September 22, 2016 and October 4, 2016, May 12, 2017, the Bank

5    charged her an Extended Overdraft Fee of $25 each.  The $50 in assessed charges are

6    usurious under the National Bank Act.

7    67)    In Plaintiff Lopez's case, one of her monthly bank statements for her

8    BBVA BANK checking account show that her account went into "overdraft" status

9    on September 13, 2016, and that her account remained in that status until September

10   26, 2016.  On September 23, 2017, the Bank charged her an Extended Overdraft Fee

11   of $25.  The $25 assessed charge is usurious under the National Bank Act.

12                              **CLASS ALLEGATIONS**

13   68)    Plaintiffs bring this action on behalf of themselves and all others

14   similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This

15   action satisfies the numerosity, commonality, typicality, adequacy, predominance and

16   superiority requirements of Rule 23.  The proposed classes are defined as:

17
18       All BBVA BANK checking account holders in California who,
         within the applicable statute of limitations, were charged OD
19       Fees on transactions that were authorized into a positive
         available balance (the "APPSN Class").

20
21       All holders of a BBVA BANK checking and/or money market
         account in California who, within the applicable statute of
22       limitations, incurred one or more Extended Overdraft Fees (the
         "Usury Class").

23   The APPSN Class and the Usury Class are collectively referred to as the

24   "Classes."

25   69)    Plaintiffs bring this action on their own behalf and on behalf of all others

26   similarly situated pursuant to Fed. R. Civ. P. 23.  Excluded from the class are BBVA

27   BANK, its subsidiaries and affiliates, its officers, directors and member of their

28   immediate families and any entity in which defendant has a controlling interest, the

legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

70)     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes if necessary before this Court determines whether certification is appropriate.

71)     This case is properly brought as a class action under Fed. R. Civ. P. 23(a) and (b)(3), and all requirements therein are met for the reasons set forth in the following paragraphs.

72)     _Numerosity under Fed. R. Civ. P. 23(a)(1)_.  The members of the Class are so numerous that separate joinder of each member is impracticable.  Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to BBVA BANK's records.  BBVA BANK has the administrative capability through its computer systems and other records to identify all members of the Class and the amount of Extended Overdrawn Balance Charges paid by each Class member, and such specific information is not otherwise available to Plaintiffs.

73)     _Commonality under Fed. R. Civ. P. 23(a)(2)_. There are numerous questions of law and fact common to the Class relating to BBVA BANK's business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members.  The common questions include, but are not limited to:

a)     Whether BBVA BANK improperly charged overdraft fees on APPSN Transactions;

b)     Whether BBVA BANK charged interest to its customers under the guise of Extended Overdraft Fee in amounts that violate the National Bank Act's usury limit;

1     c)  Whether BBVA BANK developed and engaged in an unlawful

2   practice that mischaracterized or concealed the true usurious nature of the

3   Extended Overdraft Fee;

4     d)  Whether BBVA BANK charged its customer an Extended

5   Overdraft Fee that bears no relationship to the actual costs and risks of covering

6   insufficient funds transactions; and

7     e)  Whether Plaintiffs and other members of the Class have sustained

8   damages as a result of BBVA BANK's assessment and collection of the

9   Extended Overdraft Fee, and the proper measure of damages.

10    74) *Typicality under Fed. R. Civ. P. 23(a)(3)*.  Plaintiffs' claims are typical

11  of the claims of the other Class members in that they arise out of the same wrongful

12  business practice by BBVA BANK, as described herein.

13    75) *Adequacy of Representation under Fed. R. Civ. P. 23(a)(4)*.  Plaintiffs

14  are adequate representatives of the Class in that they have BBVA BANK checking

15  accounts and have suffered damages as a result of BBVA BANK's assessment and

16  collection of the Extended Overdraft Fee.  In addition:

17    a)  Plaintiffs are committed to the vigorous prosecution of this action

18  on behalf of themselves and all others similarly situated and have retained

19  competent counsel experienced in the prosecution of class actions and, in

20  particular, class actions on behalf of consumers against financial institutions;

21    b)  There is no hostility of interest between Plaintiffs and the unnamed

22  Class members;

23    c)  They anticipate no difficulty in the management of this litigation as

24  a class action; and

25    d)  Plaintiffs' legal counsel have the financial and legal resources to

26  meet the substantial costs and legal issues associated with this type of litigation.

27    76) *Predominance under Fed. R. Civ. P. 23(b)(3)*. The questions of law and

28  fact common to the Class as set forth in the "commonality" allegation above

1   predominate over any individual issues.  As such, the "commonality" allegations

2   (paragraph 73 and subparts) are restated and incorporated herein by reference.

3        77)    *Superiority under Fed. R. Civ. P. 23(b)(3).*  A class action is superior to

4   other available methods and highly desirable for the fair and efficient adjudication of

5   this controversy.  Since the amount of each individual Class member's claim is very

6   small relative to the complexity of the litigation and since the financial resources of

7   BBVA BANK are enormous, no Class member could afford to seek legal redress

8   individually for the claims alleged herein.  Therefore, absent a class action, the Class

9   members will continue to suffer losses and BBVA BANK's misconduct will proceed

10  without remedy.  In addition, even if Class members themselves could afford such

11  individual litigation, the court system could not.  Given the complex legal and factual

12  issues involved, individualized litigation would significantly increase the delay and

13  expense to all parties and to the Court.  Individualized litigation would also create the

14  potential for inconsistent or contradictory rulings.  By contrast, a class action presents

15  far fewer management difficulties, allows claims to be heard which might otherwise

16  go unheard because of the relative expense of bringing individual lawsuits, and

17  provides the benefits of adjudication, economies of scale and comprehensive

18  supervision by a single court.

19       78)    All conditions precedent to bringing this action have been satisfied

20  and/or waived.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief for Permanent Injunction)
### (On behalf of the Classes)

24       79)    Plaintiffs incorporate the preceding allegations by reference as if fully

25  set forth herein.

26       80)    There exists an actual controversy between the parties as to whether,

27  under the Deposit Agreement, Defendant misrepresented the true nature of the

28  Extended Overdraft Fee, disguising its true nature, which is an interest charge; and

1   whether Defendant improperly charged overdraft fees in violation of its contractual

2   promises and consumers' reasonable expectations.

3       81)     This actual controversy concerns the parties' legal rights and duties

4   under the Deposit Agreement, and presents a justiciable question:  whether, by

5   issuing deceptive statements regarding the Extended Overdraft Fee; by charging a fee

6   in violation of federal law; and by improperly charging overdraft fees in violation of

7   its contractual promises and consumers' reasonable expectations, Defendant violated

8   California consumer protection law.

9       82)     Plaintiffs and the Class therefore seek a declaration of rights that

10  Defendant is not permitted to misrepresent the nature of the Extended Overdraft Fee;

11  to charge a fee in violation of federal usury law; or to improperly charge overdraft

12  fees in violation of its contractual promises and consumers' reasonable expectations.

13  As monetary damages would not prevent Defendant from making misrepresentations

14  or assessing such wrongful charges in the future, Plaintiffs and the Class members

15  have no adequate remedy at law, and an injunction is therefore warranted.

16

17              **SECOND CLAIM FOR RELIEF**
                       **(Breach of Contract)**
18               **(On Behalf of the APPSN Class)**

19      83)     Plaintiffs incorporate the preceding allegations by reference as if fully

20  set forth herein.

21      84)     Plaintiffs and BBVA BANK have contracted for bank account deposit,

22  checking, ATM, and debit card services.

23      85)     BBVA BANK misconstrued in the account documents its true debit card

24  processing and OD Fee practices and breached the express terms of the account

25  documents.

26      86)     BBVA BANK breached promises included in the account documents.

27      87)     No contract provision authorizes BBVA BANK to charge OD Fees on

28  APPSN Transactions. Rather, the contract only authorizes BBVA Bank to charge OD

Fees on transactions for which sufficient funds did not exist at the time of authorization.

88) Therefore, BBVA BANK breached the terms of its account documents by charging OD Fees on transactions that were authorized into a sufficient available balance, but whose available balances were allegedly insufficient at the time the transactions were settled.

89) Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

90) Plaintiffs and members of the Classes have sustained damages as a result of BBVA BANK's breach of the contract.

## THIRD CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing)
### (On Behalf of the APPSN Class)

91) Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

92) Plaintiffs and BBVA BANK have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in contract documents.

93) Under the law of California, good faith is an element of every contract pertaining to the assessment of OD Fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

94) Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may

be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

95)   BBVA BANK has breached the covenant of good faith and fair dealing in the contract through its overdraft policies and practices as alleged herein.

96)   Specifically, BBVA BANK harms consumers by abusing its contractual discretion in a number of ways which no reasonable consumer would anticipate.

97)   BBVA BANK uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

98)   BBVA BANK uses these contractual discretion points to extract OD Fees on transactions that no reasonable consumer would believe could cause OD Fees.

99)   Plaintiffs and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the account documents.

100)   Plaintiffs and members of the Classes have sustained damages as a result of BBVA BANK's breach of the covenant of good faith and fair dealing.

**FOURTH CLAIM FOR RELIEF**
**Conversion**
**(On Behalf of the APPSN Class)**

101)   Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

102)   BBVA BANK had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

103)   BBVA BANK has wrongfully collected OD Fees from Plaintiffs and the members of the Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

104)   BBVA BANK has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the Class, without legal justification.

105)   BBVA BANK continues to retain these funds unlawfully without the consent of Plaintiffs or members of the Class.

106)   BBVA BANK intends to permanently deprive Plaintiffs and the members of the Class of these funds.

107)   These funds are properly owned by Plaintiffs and the members of the Classes, not BBVA BANK, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the Classes.

108)   Plaintiffs and the members of the Class are entitled to the immediate possession of these funds.

109)   BBVA BANK has wrongfully converted these specific and readily identifiable funds.

110)   BBVA BANK's wrongful conduct is continuing.

111)   As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the Class have suffered and continue to suffer damages.

112)   By reason of the foregoing, Plaintiffs and the members of the Class are entitled to recover from BBVA BANK all damages and costs permitted by law, including all amounts that BBVA BANK has wrongfully converted.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the APPSN Class)**

113)   Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein, excluding statements which allege that valid contractual terms govern the challenged conduct.

114)   Plaintiffs, on behalf of themselves and the Class, assert a common law claim for unjust enrichment, in the alternative.

115)   By means of BBVA BANK's wrongful conduct alleged herein, BBVA BANK knowingly provided banking services to Plaintiffs and members of the Classes that was unfair, unconscionable, and oppressive.

116)   BBVA BANK knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class.  In so doing, BBVA BANK acted with conscious disregard for the rights of Plaintiffs and members of the Class.

117)   As a result of BBVA BANK's wrongful conduct as alleged herein, BBVA BANK has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

118)   BBVA BANK's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

119)   Under the common law doctrine of unjust enrichment, it is inequitable for BBVA BANK to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of OD Fees on Plaintiffs and members of the Class in an unfair, unconscionable, and oppressive manner.

120)   BBVA BANK's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

121)   The financial benefits derived by BBVA BANK rightfully belong to Plaintiffs and members of the Class.  BBVA BANK should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by BBVA BANK traceable to Plaintiffs and the members of the Class.

122)   Plaintiffs and members of the Class have no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**
**Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200**
**Fraudulent Prong**
**(On Behalf of the Classes)**

123)   Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

124)   BBVA BANK's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, *et seq*.

125)   BBVA BANK's conduct violates the UCL's "fraudulent" prong in the following respects, among others:

BBVA BANK's practice of falsely indicating in account documents that OD Fees will not be charged when sufficient available funds exist to pay transactions.

Affirmatively and knowingly misrepresenting that the Extended Overdraft Charge is not an interest charge.  Such representations are likely to mislead the public, which would not contract for banking services if it knew BBVA charged extraordinarily high, usurious interest, and that it charged OD Fees on transactions when sufficient available funds exist to pay the transactions.

126)   As a result of BBVA BANK's violations of the UCL's "fraudulent" prong, Plaintiffs and members of the California Subclass have paid, and/or will continue to pay, unreasonably excessive amounts of money for banking services and thereby have suffered and will continue to suffer actual damages.

**SEVENTH CAUSE OF ACTION**
**(For Violation of the California Unfair Competition Law, Cal. Bus. &**
**Prof. Code § 17200—Unlawful Prong)**
**(On behalf of the Classes)**

127)   Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

128)   Defendant committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code § 17200, *et seq*., by violating the Consumers Legal Remedies Act, as set forth *infra*, and by violating the National Bank Act, also set forth *infra*.

129)   As a direct and proximate result of the foregoing unlawful practices, Plaintiffs and Class members suffered and will continue to suffer actual damages.

130)   Plaintiffs and the Class further seek an order enjoining <u>Defendants'</u> unfair or deceptive acts or practices, and an award of attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

## <u>EIGHTH CLAIM FOR RELIEF</u>
**Violation of The Consumer Legal Remedies Act,
California Civil Code §§ 1750, *et seq*.
(On behalf of the Classes)**

131)   Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

132)   This cause of action is brought pursuant to the CLRA.

133)   Plaintiffs and each member of the Classes are "consumers" within the meaning of California Civil Code § 1761(d).

134)   BBVA BANK's checking accounts and debit card services were transactions within the meaning of California Civil Code § 1761(e).

135)   Defendant violated California Civil Code § 1770(a)(5) by misleading consumers to believe that OD Fees will not be charged when sufficient funds exist to pay transactions, when OD Fees are in fact charged in such circumstances.

136)   In addition, Defendant's representation that the Extended Overdraft Fee it assesses is not interest is false and constitutes a deceptive and misleading business practice in violation of the CLRA.  Defendant's assessment of interest charges in excess of those allowed by law also violates the CLRA.

137)   Defendant continues to violate the CLRA and continues to injure the public by misleading consumers about when it will charge OD Fees and by charging excessive interest in the form of Extended Overdraft Fees. Accordingly, Plaintiffs seek injunctive relief on behalf of the general public to prevent BBVA Bank from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiffs and the Class and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

138)   Pursuant to Section 1782(d) of the CLRA, Plaintiffs reserve the right to amend this Complaint to include a request for damages under the CLRA pursuant to Section 1782(a) of the CLRA within thirty (30) days of providing the required notice.

139)   Plaintiff Lopez's affidavit stating facts showing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(c) is attached hereto as Exhibit 2.

## NINTH CAUSE OF ACTION
### (Violation of the National Bank Act, 12 U.S.C. §§ 85, 86)
### (on behalf of the Usury Class)

140)   Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

141)   Interest, by definition, is compensation for the use or forbearance of money or as damages for its detention.  That is exactly the nature of BBVA BANK's Extended Overdraft Fee.  Any such charges imposed on a customer for use or forbearance of money or as damages for its detention – no matter how labelled by BBVA BANK – are in fact interest and in this case usurious, as alleged below.

142)   Claims for usury against a national bank such as BBVA BANK are governed exclusively by certain provisions in the National Bank Act – specifically, 12 U.S.C. §§ 85, 86.  Under § 85, a national bank may charge interest on any loan or debt at the *greater* of two options. Option (1) is "the rate allowed by the laws of the State ... where the bank is located."  Option (2) is "1 per centum in excess of the

discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located."

143)   Under option (1), the maximum allowable interest rate that BBVA BANK would be allowed to charge its customers would be 8% because the law provides that a bank is located only in the state that is designated on its organization certificate.  BBVA BANK is deemed to be located in Alabama because it designates Alabama as its location in its organization certificate.

144)   Under Alabama law, the maximum allowable interest rate where no specific rate has been agreed to is 8%.  Ala. Code 8-8-1.2.

145)   At all material times, the 8% Alabama interest rate limit (the Option (1) rate) exceeded the Option (2) rate, applying the specified discount rate.  As such, 8% is the maximum BBVA BANK could charge its customers in this context.

146)   By assessing and collecting Extended Overdraft Fee, BBVA BANK has knowingly extended credit to Plaintiffs and others similarly situated for use in their checking and/or money market accounts. Such extensions of credit are loans made without a specific loan agreement. In fact, 12 U.S.C. § 84 defines the term "loans and extensions of credit" as including any and all direct or indirect advances of funds to a person made on the basis of any obligation of that person to repay the funds.  In addition, federal banking regulators in guidance issued to national banks on the subject of overdraft items have expressly stated: "When overdrafts are paid, credit is extended." *See* Joint Guidance on Overdraft Protection Programs, 70 Fed. Reg. 9127, 9129 (Feb. 24, 2005).

147)   Although BBVA BANK is only permitted to charge Plaintiffs and others similarly situated a *maximum* of 8% annualized interest on these loans and extensions of credit, BBVA BANK has knowingly charged and collected Extended Overdraft Fees from Plaintiffs and others similarly situated that far exceeded this permissible rate.

148)   Applying the maximum annual interest rate to the period that Plaintiffs' accounts had a negative balance, the maximum amount that BBVA BANK was legally permitted to charge Plaintiff was far less than BBVA BANK charged Plaintiff Wright when it assessed the $25 Extended Overdraft Fee.

149)   The Extended Overdraft Fee charged to Plaintiffs and others similarly situated for such advances of money are egregiously high, usurious, and illegal.

150)   By labeling its charge as a Extended Overdraft Fee, BBVA BANK cannot mask the true nature of the charge.

151)   Plaintiffs and those similarly situated have sustained damages based on BBVA BANK's violation of the NBA through its assessment and collection of the Extended Overdraft Fee.

152)   The usurious transactions at issue all occurred less than two years prior to the commencement date of this action.

153)   Plaintiffs and those similarly situated are entitled to recover twice the amount of the usurious interest they paid under 12 U.S.C. § 86, which provides:

> In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, *twice the amount of interest thus paid from the association taking or receiving the same* . . . (Emphasis added).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Class demand a jury trial on all claims so triable and judgment against Defendant as follows:

A.     An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representative and Plaintiffs' counsel be appointed Class Counsel;

1  B.  Declaring that Defendant is not permitted to misrepresent the nature of the

2  Extended Overdraft Fee or to charge a fee in violation of federal usury law and is

3  otherwise required to conduct business lawfully;

4  C.  Issuing public injunctive relief, including to ensure compliance with the

5  CLRA and UCL;

6  D.  A judgment awarding Plaintiffs and all members of the Class restitution

7  and/or other equitable relief, including, without limitation, restitutionary disgorgement

8  of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the

9  Class as a result of its unlawful, unfair and fraudulent business practices described

10  herein;

11  E.  Declaring that BBVA BANK violated the CLRA and UCL by charging

12  overdraft fees on transactions that do not actually overdraw accounts;

13  F.  Ordering injunctive relief to ensure compliance with the CLRA and UCL;

14  G.  Ordering BBVA BANK to immediately cease the wrongful conduct set

15  forth above and enjoining BBVA BANK from continuing to charge overdraft fees on

16  transactions that do not actually overdraw accounts and otherwise enjoining BBVA

17  BANK from conducting business via the unlawful and unfair business acts and

18  practices complained of herein;

19  H.  A judgment awarding Plaintiffs their costs of suit; including reasonable

20  attorneys' fees pursuant to California Civil Code § 1780(d) and as otherwise permitted

21  by statute; and pre and post-judgment interest;

22  I.  A judgment awarding actual and punitive damages to Plaintiffs and the

23  Class in an amount to be determined at trial; and

24  J.  Granting such other relief as the Court deems just and proper.

25  **<u>DEMAND FOR JURY TRIAL</u>**

26  Plaintiffs and all others similarly situated hereby demand trial by jury on all

27  issues in this complaint that are so triable as a matter of right.

28  Dated:  January 6, 2018                    Respectfully submitted,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Jeffrey D. Kaliel
Jeffrey D. Kaliel (CA Bar No. 238293)
KALIEL PLLC
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783
*jkaliel@kalielpllc.com*

Attorney for Plaintiffs
and the Putative Class

CLASS ACTION COMPLAINT